JUAN VILLA RAMIREZ (T-24667)
San Quenitn Prison (4-EY-22)
San Quentin, Ca. 94974

⊏ filing

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Juan Villa Ramirez
_____
            Plaintiff: pro se.

        v.

James Tilton, Director; Robert Ayers, Warden:
W. Jepperson, R. Chandler-Dacanay, Reed,
Appeals Coordinators; Max Lemon, Chief Deputy
Warden; D. Dacanay, Associate Warden; R. Fox,
Facility Captain; C. Hollis, J. Pearson, 3rd.
Level Reviewers; M.T.A.s' Guildersleeves,
Morrow, Terranu, and Senior M.T.A. Hill Cull-
pepper; Doctors' ?. Sayler, Poluzza, T. Bel-
avich, Khosla, D. Calvo; P.L.O. Attorneys
D. Specter and S. Fama. et. al.
_____

Defendants in their Personal & Official-
        Capacities.

Case No. _____

Complaint under Civil Rights
Act 42 USC §1983-§1985 and 42 USC
§12101 et seq. Request for Declar-
atory and Injunctive relief, and
Request for Punitive & General
Damages.
    Request for Jury Trial in re:
F.R.C.P. 38-39, And Request for
APPOINTMENT OF COUNSEL, Motion
ATTACHED AS **ATTACHMENT-A** of this
Complaint.

        Plaintiff brings this complaint before the court to ask that this court declare

that the Defendants have and continue to violate Plaintiff's State Created and Con-

stitutional Rights. Plaintiff's rights "have been" and "continue" to be violated by

the Defendants with malicious and deliberate intent which is subjecting Plaintiff to

Cruel and Unusual Punishment, in violation of the Eighth Amendment of the U.S. Con-

stitution.

        Plaintiff also seeks for a permanent injunction to prevent the Defendants from

continuing to violate Plaintiff's constitutional rights while acting under "Color of

Law", "Color of Office" and color of "any" statute, ordinance, regulation or custom;

of which should be accorded the same construction in both 18 U.S.C. §242, which pro-

vides for criminal punishment, and §1983 which gives right of action against persons

who under color of state law subjects another to any deprivations to any rights, pri-

vileges or immunities secured by the United States Constitution.

        Plaintiff seek punitive and general damages for the actual physical harm and

injury he has and continues to suffer at the hands of Defendants, And for the extreme

page 1.

1. emotional duress and anguish caused by the Defendants actions. These actions amount
2. to violations of Plaintiff's eighth amendment protections, and protections under art-
3. icle one section seven of the California Constitution. Plaintiff asks for punitive
4. damages in the amount of $250,000.00 from each Defendant and all of them, And General
5. damages in the amount of $10,000.00 for every day that Plaintiff was subjected to dis-
6. crimination due to his peanut allergies. (starting from February 4, 2007 – Present).
7.     Plaintiff asks for a jury trail, and to be present at trial with appointed cou-
8. nsel, pursuant to FRCP 38-39 (please see **ATTACHMENT A**, Request for Counsel).
9.     This case is brought pursuant to 42 U.S.C. §1983 and §1985 to redress the depri-
10. vations under color of state law, of rights secured by the United States Constitution
11. and 42 U.S.C. §12101 et seq which PROHIBITS DISCRIMINATION against qualified individ-
12. uals with disabilities. Jurisdiction is based upon 28 U.S.C. §1343. This court also
13. has Supplemental Jurisdiction over those claims arising under state law pursuant to
14. 28 U.S.C. §1367. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and
15. §2202. The unlawful/unconstitutional acts and practices described in this complaint
16. occurred primarily within the jurisdictional district and the majority of the Defend-
17. ants reside within the district, 28 U.S.C. §1391(b).
18. STATEMENT OF FACTS
19.     Plaintiff is currently a condemned prisoner at San Quentin State Prison. Plaint-
20. iff is also afflicted with TWO medical/health conditions which are considered "perm-
21. anent disabilities" pursuant to the Director's Rules <u>Title 15 §3084(k)</u> and 42 U.S.C.
22. §12101 et seq. These disabilities are HEMAGIOMAS (see CLAIM I) and PEANUT ALLERGIES
23. (see CLAIM II).
24.     Plaintiff contends that the Defendants have and continue to discriminate against
25. Plaintiff because of his disabilities/health problems, and they have and continue to
26. show a DELIBERATE INDIFFERENCE towards Plaintiff's medical care and needs, and due to
27. this indifference, Defendants have caused Plaintiff to live in unwarranted pain/disc-
28. omfort, and are subjecting Plaintiff to a state diet that is nutritionally deficient.

1.     Plaintiff contends that these actions are in clear violation of his Eighth Amend-
2. ment Rights to be free from Cruel and Unusual Punishment, and his rights established
3. by Legislature in 42 U.S.C. §12101 et seq. which is the basis of this case being sub-
4. mitted now.

5.     Plaintiff contends that the Defendants actions and motives are exacerbated by
6. their REFUSAL to process Plaintiff's MEDICAL (602) Administrative Grievance Appeals
7. and Reasonable Modification/Accommodation Request CDC 1824 Form. (see CLAIM III).

8.     Plaintiff has and continues to try and resolve his complaints/concerns over the
9. level of medical care and treatment he is receiving for his health conditions/disab-
10. ilities. But the Defendants have REFUSED TO PROCESS, or have COMPLETELY OBSTRUCTED
11. Plaintiff's ability to exhaust his administrative grievance appeals. Clearly this
12. obstruction and refusal to process Plaintiff's grievance appeals are an attempt to
13. keep Plaintiff from seeking/obtaining access to the courts, and from obtaining any
14. relief from Defendants unconstitutional actions of Medical Indifference/Malpractice.

15.     Plaintiff has attached a "fully exhausted" administrative appeal hereto, but
16. there are still pending issues that are being REFUSED ANY PROCESSING by the Defend-
17. ant's, And therefore are "statutorily waived" by the Defendants in re: Woodford v.
18. Ngo 126 S.Ct 2378 (2006) citing, ADMINISTRATIVE LAW AND PROCEDURE 15A:

19.           "Proper exhaustion of administrative remedies demands
             compliance with an agency's deadlines and other crit-
20.           ical procedural rules because no adjudicative system
             can function effectively without imposing some order-
21.           ly structure on the course of its proceedings".

22.     It should be noted that this was the Director's position presented to the United
23. States Supreme Court in Woodford v. Ngo Id. And Plaintiff contends that this ruling
24. and statutory guidelines MUST BE ENFORCED AGAINST THE DEFENDANTS ALSO if they "FAIL"
25. or "REFUSE" to meet the State's Established Time Limits/Deadlines for "Responding to
26. Inmate Grievance Appeals", Because it is inconceivable that the U.S. Supreme Court
27. would make a ruling that is NOT EQUALLY APPLICABLE TO BOTH PARTIES OF A CIVIL ACTION
28. OR CONTROVERSY.

1.     Plaintiff respectfully reminds the court that, Under the settlement of the class

2. action lawsuit <u>Plata v. Davis</u> (N.D. Cal) No. C01-1351 TEH, the California Department

3. of Corrections is supposed to make major medical improvements at all prisons except

4. Pelican Bay (which is governed by another lawsuit) starting in January 2003; most of

5. these changes are to be phased in at five or six prisons each year over five years.

6. Both the Prison Law Office and independent court-appointed medical experts are suppos-

7. ed to be monitoring CDC's compliance with the settlement.

8.     Plaintiff contends that he has contacted the Prison Law Office (Plata Attorneys)

9. and Robert Sillen (court-appointed monitor) through his capital attorney Lisa Short to

10. present his medical issues, complaints and needs, And these very individuals who are

11. supposed to be overseeing the Medical Treatment and Care that is being provided to the

12. prisoners in California have completely ignored Plaintiff's health concerns and needs

13. without even contacting Plaintiff to "evaluate" his condition or concerns. In fact,

14. the prison Law Office has displayed a complete abandonment and indifference towards

15. Plaintiff's medical needs and condition by responding to Plaintiff's attorney in the

16. following manner, "Because it APPEARS that Mr. Ramirez is receiving <u>Dribs and Drabs</u> of

17. Medical Treatment the Prison Law Office will not get involved with his issues", (see

18. EXHIBIT D.6(c)  )

19.     Plaintiff asks, "Is this the type of representation the Federal Court finds to be

20. <u>diligent</u> and/or <u>competent</u> by the very attorneys representing the health crisis in Cal-

21. ifornia"? Plaintiff contends that the Prison Law Office is properly named for their

22. indifference and abandonment of their representation of Plaintiff's Medical Needs and

23. Care under the Plata Settlement.

24. CLAIM I.<br>DEFENDANTS HAVE AND CONTINUE TO SHOW

25. MEDICAL INDIFFERENCE TOWARDS PLAINTIFF'S DISABILITY<br>"HEMANGEOMAS".

26.

27.     Plaintiff suffers from "Hemangeomas", which is a disease/condition that causes

28. tumors to develop in his body. Currently, Plaintiff has these tumors in his Neck, Face

1. and Mouth which causes Plaintiff a great deal of discomfort and pain on a daily basis.
2. But these tumors also have a tendency to SWELL UP without any prior systems or regular-
3. ity, And it is during these times when Plaintiff's pain and discomfort INCREASES, and
4. depending upon how much swelling has occurred these tumors severely incapacitate Plain-
5. tiff's daily activities.

6. The Defendants cannot contest that Plaintiff suffers from "Hemangeomas", In fact,
7. for the courts convenience Plaintiff has ATTACHED Expert Medical Testimony and Medical
8. Reports which clearly describes what Hemangeomas are, and how this condition afflicts
9. Plaintiff. [see EXHIBITS A.1 through A.39].

10. Under the definition of 42 U.S.C. §12101 et seq. Plaintiff's condition "qualifies"
11. him as a "person with a disability". And the State's OWN RULES describes ANY condition
12. or disability which is expected to last more than SIX MONTHS as a PERMANENT DISABILITY,
13. SEE Title 15 §3084(k).

14. Basically at this point in time, the only treatment San Quentin's Medical Staff
15. can provide to Plaintiff is (1.) Provide Plaintiff with prescription pain medication
16. for the existing tumors which cause Plaintiff pain and discomfort on a daily basis.
17. And (2.) To schedule medical checkup appointments to continuously evaluate Plaintiff's
18. condition, to insure that Plaintiff's current tumors are not growing/causing any imm-
19. ediate/future health problems; and to insure that there are NO MORE tumors developing
20. which can/will impact Plaintiff's well being presently or in the future. It is not un-
21. reasonable for Plaintiff to "request" and "receive" this pain medication, along with
22. REGULAR FOLLOW-UP EXAMINATIONS by San Quentin's Medical Doctors so that they can keep
23. themselves "informed" of any changes in Plaintiff's verified condition. And it is not
24. UNREASONABLE to believe that this request would be consistent with the professional
25. treatment, opinions and actions of the medical professionals in the community.

26. Plaintiff contends that the level of medical attention and treatment he has and
27. continues to receive at San Quentin State Prison is equivalent to Cruel and Unusual
28. Punishment. It has been determined that Plaintiff will probably have to live with

1. Hemangeomas for the rest of his life. And in spite of Plaintiff's verified medical
2. condition, and the numerous complaints Plaintiff has made concerning his pain and dis-
3. comfort, and about the lack of treatment that is being provided to Plaintiff; San Quen-
4. ntin's Medical Personnel and Non-Medical Personnel Defendants et al. have ALL shown a
5. Deliberate Indifference towards Plaintiff's Medical Needs. Plaintiff's Capital Counsel
6. has created a chronological chart describing all of these complaints filed by the Pla-
7. intiff and even some filed by Capital Counsel herself, [see EXHIBITS B.1 through B.
8.      Plaintiff contends that the Defendants actions of Medical Indifference/Malprac-
9. tice has and continues to occur as follows. San Quentin's Medical Doctors continuously
10. delay/refuse to prescribe any pain medication to Plaintiff; And even when they do pre-
11. scribe pain medication to relieve Plaintiff's pain/discomfort, the Medical Nurses who
12. issue this medication are REFUSING TO PROVIDE Plaintiff with ALL of the medication
13. that was prescribed by the TREATING PHYSICIAN stating that the Department of Correct-
14. ions has "policies" dictating how prescription medication will be issued, [see EXHIB-
15. ITS C.8 through C.8e ]. And when Plaintiff's pain medication is prescribed, it is only
16. for 30 to 90 days, so when this prescription runs out, Plaintiff has to fill-out an-
17. other sick call slip so that he can be SCHEDULED to see a Doctor "again" who may or
18. may not refill his pain medication prescription. Due to this non-functioning system of
19. bureaucracy within San Quentin and the Department of Corrections many time Plaintiff
20. ends up going days or weeks without receiving any pain medication. Plaintiff's Heman-
21. geomas DOES NOT GO AWAY, or stop causing Plaintiff pain and discomfort after 90 days,
22. and this should be KNOWN and Clear to the Doctors treating Plaintiff for this disease.
23.      Plaintiff contends that the current system which forces him to go without pain
24. medication for more than a few days is Cruel and Unusual Punishment. Plaintiff also
25. contends that the Director's promulgation and enforcement of "policies" which inter-
26. fere with a treating physicians prescription of pain medication is also a policy that
27. is Indifferent to Plaintiff's Medical Needs for the following reasons; (1.) "WHO" in
28. Sacramento has promulgated this policy? If it is a medical professional, then wouldn't

1. it be malpractice for this physician to CREATE POLICY which affects everyone in the

2. Department of Corrections who have not been "examined" by this doctor? And it is also

3. CLEAR that the Department's promulgation of "policies" which DO NOT factor in "special

4. cases" like the Plaintiff's are clearly unconstitutionally cruel and unusual punish-

5. ment. (2.) "If" this policy is being promulgated by a non-medical professional, then

6. wouldn't this person's promulgation of medical policies be "Practicing medicine WITH-

7. OUT A LICENSE"?

8.     In addition to all of the problems Plaintiff has had, and continues to have get-

9. ting prescription pain medication. Plaintiff contends that the Medical Doctors at San

10. Quentin ARE NOT examining Plaintiff to evaluate whether his condition is "stable" or

11. whether the tumors he has are getting bigger, or if there are any "new ones develop-

12. ing". This standard of care and treatment from the very doctors who have Plaintiff in

13. front of them (when they do refill his prescription medication) is Completely Unexcus-

14. able and a CLEAR DISPLAY of Defendants Indifference towards Plaintiff's Medical Needs

15. and His LIFE, Because it is NOT REASONABLE to ask Plaintiff who is not a doctor to

16. evaluate/diagnose himself and his condition.

17.     Prisoners have a constitutional right to adequate medical health care, and "inad-

18. equate" medical health care can constitute cruel and unusual punishment in violation

19. of the Eighth Amendment, Estelle v. Gamble (1976) 429 U.S. 97 [97 S.Ct 285; 501 L.Ed.2d

20. 251], and Hutchinson v. United States (9th Cir. 1988) 838 F.2d 390, 394. Whether a par-

21. ticular course of treatment, or the refusal to provide treatment, amounts to "deliber-

22. ate indifference" to a serious medical need generally turns upon the particular facts

23. of the case, First a prisoner must show the medical need was serious. A serious med-

24. ical need includes the existence of an injury that a reasonable doctor or patient would

25. find important and worthy of comment or treatment, the presence of a medical condition

26. that significantly affects an individual's daily activities, or the existence of "chr-

27. onic" and substantial pain, McGucklin v. Smith (9th Cir. 1992) 974 F.2d 1050, 1059-60,

28.     Clearly Plaintiff falls within the description of a person with "serious medical

needs" as is described above. Plaintiff "is" a qualified person with a disability pur-
suant to 42 U.S.C. §12101 et seq. and the State's OWN RULES Title 15 §3084(k). In 1998,
the U.S. Supreme Court held that the ADA applies to prisoners, Pennsylvania Dept. of
Corrections v. Yeskey (1988) 524 U.S. 206 [118 S.Ct 1952; 141 L.Ed.2d 215]. Specific-
ally, the Court held that Title II of the ADA - Prohibiting a "public entity" from dis-
criminating against a "qualified individual with a disability" on account of the indi-
viduals disability-applied to inmates in state prisons, Ibid.; Americans with Disabil-
ities Act 1990 42 U.S.C. §12131 et seq. See also, Armstrong v. Davis, (N.D. Cal.) C94-
2307 CW and Clark v. California (N.D. Cal.) C96-1486 FMS. Congress acted constitution-
ally and did not exceed its authority when it enacted ADA 42 U.S.C. §12101 et seq pur-
suant to its enforcement powers under §5 of Fourteenth Amendment, with intent that
statute apply to prisoners in state prisons, Amos v. Maryland Dept. of Pub. Safety &
Corr. Servs., (1999, CA 4 Md) 178 F3d 212, 9 AD Cas 769.

State law protects people, including prisoners, from negligent treatment by doc-
tors and other medical care staff, such negligence is called medical malpractice, Gov-
ernment Code §§844.6(d) and §845.6, Ashker v. Calif. Dept. of Corrections (9th Cir.
1997) 112 F.3d 392. The state is required to pay malpractice judgments issued against
state medical care employees, Gov. Code §844.6(d). To prove medical malpractice a pri-
soner must show that the doctor failed to use that degree of skill usual among doctors
of good standing in the community, and that the doctor's acts or omissions were a pro-
ximate cause of an injury suffered by a prisoner. Except in unusual case, demonstrat-
ing that a particular doctor's actions were negligent WILL REQUIRE TESTIMONY OF AN EX-
PERT WITNESS, USUALLY ANOTHER DOCTOR. [see ATTACHMENT A ].

A prisoner may be able to prove deliberate indifference to a serious medical need
when prison officials "deny", "delay" or "interfere" with treatment or when the pris-
oner receives improper medical care. Thus, to prove deliberate indifference, a prison-
er need not necessarily show he was "completely denied" medical care, Ortiz v. City of
Imperial (9th Cir. 1989) 884 F.2d 1312, 1314; see also, Lopez v. Smith (9th Cir.2000)

1. 203 F.3d 1122. Plaintiff strongly believes that he has presented enough information
2. and evidence to the court to support a claim of Medical Indifference and Malpractice
3. and asks this court to declare that Plaintiff has presented cognizable issues ripe for
4. a jury trial.

CLAIM II.
DEFENDANTS REFUSE TO ACCOMMODATE
PLAINTIFF'S PEANUT ALLERGIES.

7.     Plaintiff contends that he suffers from peanut allergies, and that it is uncontro-
8. vertable that "if" Plaintiff were to consume "peanuts" or a "product that contained pe-
9. anuts" Plaintiff would require an immediate injection of epinephrine. (see EXHIBIT D.1)
10.     Plaintiff contends that because he is incarcerated and subjected to a standardized
11. state diet which serves peanut butter at minimum "3 times a week", Plaintiff's peanut
12. allergies qualify him as a person with a disability, and therefore is protected from
13. discrimination due to his disability under the guidelines of the ADA, and the Depart-
14. ment's OWN RULES, Title 15 §3084(k).
15.     Plaintiff contends that he is being subjected to discrimination because of his
16. peanut allergies and this discrimination is occurring as follows;
17.     1.) The regular standardized diet which is served to the inmate population at
18.        San Quentin State Prison serves peanut butter a minimum of THREE TIMES A
19.        WEEK. (see EXHIBITS E.1 through E.13). which are the quarterly menus of
20.        San Quentin's meals, Breakfast, Lunch and Dinner.
21.     2.) Plaintiff contends that when the defendants place peanut butter DIRECTLY
22.        ON THE Breakfast Trays, Plaintiff CANNOT EAT ANY OF THAT BREAKFAST TRAY
23.        DUE TO THE IMMEDIATE THREAT OF ANY OF THAT TRAY BEING CONTAMINATED WITH
24.        PEANUT PRODUCT.
25.     3.) Plaintiff contends that when the Defendants place peanut butter packets
26.        in the lunches, Plaintiff CANNOT EAT any of that lunch either due to
27.        the immediate treat that any of the food in the lunch being contamin-
28.        ated with peanut product also. Plaintiff contends that even though

1.     the peanut butter in the lunches are contained/sealed in their own

2.     packets, it is not unusual to feel an oily residue all over the

3.     packets themselves, and CLEARLY Plaintiff has to exercise extreme

4.     caution to avoid eating any peanut product.

5.     4.) The Defendants "currently" and have had for many years a SPECIAL DIET

6.     PROGRAM in place to ACCOMMODATE Religious Diets and Vegetarian Diets

7.     (Marked/Identified as A.E. on all of the quarterly menus which stands

8.     for ALTERNATIVE ENTREE). But, the Defendants WILL NOT ACCOMMODATE Pla-

9.     intiff and provide him with an Alternative Diet whenever peanut butter

10.     is being served "as a meal" or "with a meal".

11.     Plaintiff has tried to resolve this issue with the Defendants informally during

12. a Institutional Classification Committee hearing (see EXHIBIT D.1   ) and through the

13. prisons administrative grievance appeal process and submission of an "Request for Rea-

14. sonable Accommodation 1824 Form" (see EXHIBITS D.2 through D.5 and C.3, C.5 – C.7).

15. But ALL of Plaintiff's administrative grievance appeals have been Denied or REFUSED

16. PROCESSING. (see EXHIBIT C.3 )

17.     It is clear that the Defendants have acted with deliberate indifference by tell-

18. ing the Plaintiff that, "It is up to YOU to choose foods you can eat off your tray,

19. There are NO SPECIAL PLANS FOR INMATES ALLERGIC TO PEANUT PRODUCTS", (see EXHIBIT C.6)

20.     This (602) was submitted to the next level for review, And has been in the  War-

21. den's Level since 2/16/07. The Defendants have REFUSED TO PROCESS THIS APPEAL, or Pro-

22. vide Plaintiff with ANY special diets, Nor have they processed his "Request for Rea-

23. sonable Accommodation 1824 Form" which was DUE ON MARCH 23, 2007. [SEE CLAIM III].

24.     It is clear that the Defendants KNOW Plaintiff has peanut allergies, and that

25. the prisons standard diet serves peanut butter REGULARLY. But the Defendants DO NOT

26. WANT TO ACCOMMODATE Plaintiff's dietary/nutritional NEEDS, Nor will they allow Plain-

27. tiff TO EXHAUST ANY OF THE ADMINISTRATIVE PROCEDURES THAT ARE AVAILABLE to recover

28. relief or remedy within the institution. These actions are CLEARLY taking place to

1. keep Plaintiff from "seeking" or "obtaining" relief and remedy from the court, bec-
2. ause they know that generally the courts are dismissing a prisoner's claims for fail-
3. ure to exhaust administrative remedies. Which clearly demonstrates that the Defendants
4. are conspiring to OBSTRUCT Plaintiff's ACCESS TO THE COURTS, and this Obstruction is
5. subjecting Plaintiff to cruel and unusual punishment due to his disability/allergy,
6. and these actions should substantiate Plaintiff's claims of Medical Indifference by
7. ALL of the Defendants.

8.     Clearly the Department of Corrections has indicated "inferences" that Medical
9. Diets SHALL TAKE PRECEDENCE OVER RELIGIOUS DIETS, See <u>Title 15 §3054(d)</u> attached here-
10. to as (EXHIBIT E.14  ). The Department of Operations Manual <u>§54080.14</u> RELIGIOUS DIETS
11. "Inmates with dietary needs that prohibit them from consuming any item from the daily
12. scheduled meal may be provided another item from the same days scheduled meal that is
13. consistent with their dietary needs". In spite of the Department's rules and regulat-
14. ions NOWHERE does the Department describe any references/guidelines on "how" to acc-
15. ommodate a medical diet, or even "what would constitute a medical diet necessity".
16. Clearly Plaintiff's peanut allergies fall within a medical diet necessity for the
17. following reasons, (1.) The <u>Title 15 §3050(a)</u> Clearly states, "Each inmate shall be
18. provided a wholesome, nutritionally balanced diet. Nutrition levels shall meet the
19. Recommended Daily Allowance established by the Food and Nutrition Board of the Nation-
20. al Research Counsel". (2.) Due to the fact that at least ONE Breakfast Tray per week
21. is served with peanut butter, and a MINIMUM of TWO LUNCHES contain peanut butter ev-
22. ery week. ALL are meals which CANNOT BE EATEN by the Plaintiff, and therefore, Due to
23. Plaintiff's allergies Plaintiff IS NOT being provided with the same amount of calor-
24. ies and nutrition as every other prisoner who doesn't have peanut allergies. Plaint-
25. iff's "calories" and "nutritional levels" are NOT MEETING THE REQUIREMENTS OF THE
26. FOOD AND NUTRITION BOARD OF THE NATIONAL RESEARCH CENTER. Plaintiff contends, that
27. because his allergies cause him to be denied the same nutritional benefits as every-
28. one else, Plaintiff's peanut allergies qualify him as a person with a disability.

1.      Plaintiff contends that the Defendants failure/refusal to provide Plaintiff with
2. an alternate diet or source of nutrition in place of the standard issue of peanut but-
3. ter, but the Defendants WILL PROVIDE these benefits to other inmates who ARE NOT suf-
4. fering from any allergies clearly shows their deliberate indifference towards Plaint-
5. iff and his medical/nutritional needs required under the Director's Rules Title 15
6. §3050. Plaintiff contends that there could be no clearer display of discrimination
7. towards a person with a disability as the actions that are occurring here. The Defend-
8. ants KNOWLEDGE of Plaintiff's disability, and their REFUSAL to ACCOMMODATE Plaintiff,
9. Their REFUSAL to Process his medical administrative Grievance Appeals or Plaintiff's
10. Request for Reasonable Accommodation 1824 Form exasperates the Defendants liability
11. for Discriminating against a person with a disability. In Burnley v. City of San Ant-
12. onio, (2004, WD Tex) 15 AD Cas 256, The court ruled, "When an employee, who had been
13. diagnosed with chronic rhinitis, requested mold-free work environment as accommodation
14. under ADA 42 USC §12101 et seq., whether such accommodations was reasonable were ques-
15. tions of fact that could not be resolved on summary judgment".
16.      The rights the ADA provide to prisoners are broader than those guaranteed by the
17. Constitution in several respects. First, the statute requires defendants to change the
18. way they operate, to provide additional services, and to make physical renovations if
19. necessary to avoid excluding disabled persons from programs and services (plaintiff's
20. food). The Rehabilitation Act standard, which will almost certainly be applied under
21. the ADA, calls for "reasonable accommodations" to permit handicapped persons to par-
22. ticipate in prison programs. So, it should NOT be an "unreasonable" request by Plaint-
23. iff that he receive a special diet in accordance with the D.O.M §54080.14, "Which sta-
24. tes, Inmates with dietary needs that prohibit them from consuming ANY ITEM from the
25. daily scheduled meal may be provided another item from the same days scheduled meal
26. that is consistent with their dietary needs". This policy IS APPLIED to prisoners with
27. Religious dietary needs and to Vegetarians. But the Defendants REFUSE to provide Plai-
28. ntiff with any modifications to his diet even though THEY KNOW, And it is CLEARLY DOC-

UMENTED that Plaintiff is allergic to peanut-butter and peanut products. Their suggestion to Plaintiff is when these items are served "as" or "with a meal" JUST DON'T EAT"

Although unit of local government such as cities and counties are "state actors" for purposes of Federal Constitution's Fourteenth Amendment, Constitution's Eleventh Amendment does not extend its immunity from suit by private individuals in federal court to units of local government; these entities are subject to private claims for damages under Americans with Disabilities Act (42 U.S.C. §12101 et seq.) without Congress' ever having to rely on §5 of the Fourteenth Amendment to render them so, Board of Trustees v. Garrett (2001) 531 U.S. 356, 148 L.Ed 2d 866.

Plaintiff contends that he has presented enough information and evidence to the court to support a claim of "Discrimination against a person with disability". Which is actionable under §1983 and 42 U.S.C. §12101 et seq. And that this claim is ripe for a jury trial.

CLAIM III.
DEFENDANTS HAVE REFUSED TO PROCESS
PLAINTIFF'S ADMINISTRATIVE GRIEVANCE APPEALS.

Plaintiff contends that Plaintiff's MEANINGFUL ACCESS to the courts extends to ESTABLISHED GRIEVANCE PROCEDURES, Bradley v.Hall 64 F.3d 1276 (9th Cir. 1995), Hinez v. Gomez, 853 F.Supp 329, 331-32 (N.D. Cal. 1994). "This right is subsumed under the first amendment right to petition the government for redress of grievances", Id. at 333, "And protects both the filing" Id. "and content", Bradley, 64 F.3d at 1279 of prison grievances.

42 U.S.C. §1997(e) b.2., REQUIRES that "Minimum Standards SHALL provide specific time limits" for written responses to grievances with responses thereto at each decision level within the system. These TIME LIMITS are clearly defined in the Director's Rules Title 15 §3084.6(b), DEPARTMENTAL RESPONSES, Appeals SHALL BE RESPONDED TO AND RETURNED TO THE APPELLANT WITHIN THE FOLLOWING TIME LIMITS:

(b.1) Informal level responses shall be completed within TEN WORKING DAYS.

(b.2) First level responses shall be completed within THIRTY WORKING DAYS.

(b.3) Second Level responses shall be completed within TWENTY WORKING DAYS, "or" Thirty Working Days "if" First Level is "waived" pursuant to §3084.5(a)(3).

(b.4) Third Level responses shall be completed within SIXTY WORKING DAYS.

(b.5) Exception is authorized in the event of, (A) Unavailability of the appell-ant or staff or inmate witness. (B) Complexity of the decision, action or poilcy. (C) Necessary involvement of other agencies or jurisdictions.

(b.6) Except for the Third Formal Level, "if" an exceptional delay prevents com-pletion of the review within specified time limits, the appellant SHALL BE INFORMED IN WRITING OF THE REASONS FOR THE DELAY AND THE ESTIMATED COMPLE-TION DATE.

Plaintiff contends that the Defendants have FAILED/REFUSED to comply with these Established Time Limits, Nor have they NOTIFIED PLAINTIFF IN WRITING of the reasons for their refusal and/or delay in responding to Plaintiff's MEDICAL APPEALS and Plain-tiff's Request for Reasonable Accommodation 1824 Form. Title 15 §3085(a) Clearly sta-tes, "CDC Form 1824 (1/95), Reasonable Modification or accommodation Requests If other-wise qualified or eligible, inmate or parolee with disabilities as defined in Title 42 U.S.C. §12102 may request reasonable modifications or accommodations to achieve acc-ess to programs, services, or activity offered by the facility, or MAY GRIEVE AN ISSUE OF ALLEGED DISCRIMINATION based on disability, by completing a CDC Form 1824. The in-mate or parolee shall complete the form side of the form and forward it to the APPEALS COORDINATOR'S OFFICE. The form shall be screened in accordance with §3084.3 screening criteria and, if it meets the initial screening criteria, is logged in the CDC Form 645 (7/77) Inmate/Parolee Appeal Log, with the status of a FIRST LEVEL REVIEW". The court's ordered rules regarding the 1824 process can be found in Armstrong v. Willson (N.D. Cal.) C94-2307 CW, Remedial Plan (November 30, 1998) "The appeal will either be scre-ened out and returned to the prisoner "or" given a log number and assigned to the first level reviewer, Ibid. A DECISION MUST BE MADE WITHIN 15 WORKING DAYS AFTER THE 1824 IS RECEIVED BY THE APPEALS COORDINATORS", ( now see EXHIBITS C. 7  through C. 7(c)     ].

1. and take notice that the Defendants Appeals Coordinators SCREENED OUT Plaintiff's 1824

2. Form and told "Plaintiff" to submit the 1824 Form to the M.T.A. himself, even "AFTER"

3. assigning the Form a LOG NUMBER. And because of the Appeals Coordinator's deliberate

4. actions, as of this 30 day of AUGUST 2007, Plaintiff HAS NOT RECEIVED ANY RESPONS-

5. ES TO HIS DISABILITY COMPLAINT FORM 1824, (also see EXHIBITS C.5a THROUGH C.6c        ].

6.       Plaintiff contends that the Department of Corrections and the California Attorney

7. General's Office who "represented" CDC, argued to the United States Supreme Court, "If

8. a prisoner submits his administrative grievance appeal BEYOND THE FIFTEEN WORKING DAY

9. TIME LIMIT set forth in Title 15 §3084.6(c) that prisoner has "statutorily Waived/De-

10. faulted their right to file their grievance in the court, Woodford v. Ngo, 126 S.Ct.

11. 2378 (2006). THE COURT AGREED stating that the Exhaustion Requirement under 42 U.S.C.

12. §1997(e) requires "proper exhaustion" which demands compliance with an agencies DEAD-

13. LINES and other critical procedural rules because no adjudicative system can function

14. effectively without imposing some orderly structure on the course of its proceedings.

15. This ruling is consistent with Administrative Law & Procedure 15A.

16.       Plaintiff contends that under the equal protection clauses of the Fourteenth Amen-

17. dment, This statutory "waiver/default" standard must also be applied to prison offici-

18. als when "they" Fail and Refuse to meet the State's Established Timelines for providing

19. WRITTEN RESPONSES to inmate administrative appeals, Id. (Title 15 §3084.6 (b.1 - b.6).

20. This statutory waiver/default must be applied to the Defendants as well, Because it is

21. inconceivable that the U.S. Supreme Court would make a ruling enforcing state and sta-

22. tutory guidelines against prisoner plaintiffs, but not prison officials who are named

23. as defendants.

24.       It is clear that the Defendants have failed/refused to respond to Plaintiff's ad-

25. ministrative grievance appeals within the state's "established time limits" and the re-

26. quirements of 42 U.S.C. §1997(e)(b.2). And Plaintiff contends that it would be a mis-

27. carriage of justice to allow Plaintiff TO GO ON SUFFERING pain and discomfort at the

28. hands of the Defendants due to the Defendants "deliberate and concerted" actions of

1. refusing to respond and exhaust Plaintiff's administrative grievance appeals, Clearly,
2. to deliberately obstruct/prevent Plaintiff from seeking and or obtaining RELIEF or REM-
3. EDY from the court. And Plaintiff contends that he should not have to continue suffer-
4. ing pain, discomfort and an nutritionally inadequate diet while the Defendants delay
5. and/or refuse to process Plaintiff's Medical Grievance Appeals for as long as they cho-
6. ose. This court has a duty to protect Plaintiff and his constitutional rights to be
7. free from cruel and unusual punishment, and Plaintiff's MEANINGFUL access to the courts
8. by not giving the Defendants an unlimited/undetermined amount of time to process Plain-
9. tiff's medical grievances. "Why should the Defendants BENEFIT from their REFUSAL TO
10. PROCESS Plaintiff's medical grievance appeals in accordance with Title 15 §3084.6(b)
11. Id. and 42 U.S.C. §1997(e)(b.2) Because these GUIDELINES ARE STATUTORILY BINDING UPON
12. THE DEFENDANTS.
13.     For all of the reasons and explanations described in CLAIM III, This court should
14. declare that the Defendants have statutorily "waived/defaulted" their right to argue
15. that Plaintiff has failed to exhaust his administrative remedies. Plaintiff also con-
16. tends that the Defendants "failure/refusal" to process Plaintiff's MEDICAL grievance
17. appeals further substantiates the Defendants Deliberate Indifference towards Plaint-
18. iff's Medical/Nutritional Needs and Disabilities as described in CLAIM I and CLAIM II.
19.                             RELIEF REQUESTED.
20.     1.) That this court DECLARE that the Defendants actions and inactions have and
21. continue to violate Plaintiff's rights protected under State Law, and Plaintiff's
22. First, Eighth and Fourteenth Amendment Rights protected under the United States Const-
23. itution. And that the Defendants actions were CLEARLY KNOW TO THEM to have violated
24. Plaintiff's rights, just as they would have been know to ANY OTHER REASONABLE Person
25. in society in charge, or a position of accommodating Plaintiff's Medical Needs, Cond-
26. itions, and Disabilities.
27.     2.) Plaintiff asks this court to make an ORDER upon the Defendants, their super-
28. visors and subordinates to PROVIDE the necessary medical care/accommodations which will

1. meet the needs of Plaintiff's medical condition/disabilities. And that the Defendants

2. SHOULD MODIFY any "Institutional" or "Departmental" policies they need to modify to ac-

3. commodate Plaintiff's medical needs, condition and disabilities; (e.g.) 1. Plaintiff's

4. condition of "Hemangeomas" has been determined to be a condition Plaintiff will have to

5. live with for the rest of his life. And therefore, the medication that is being prescr-

6. ibed to Plaintiff to "alleviate" his daily pain and discomfort SHOULD NOT EXPIRE every

7. (30 - 90) days, which forces Plaintiff to go through a bureaucracy of policies and pap-

8. er work just to get his pain medication refilled "with no questions asked" and at NO

9. TIME during this process do any of the Defendants provide Plaintiff with any type of

10. examination to evaluate Plaintiff's condition; Plaintiff respectfully asks that he be

11. examined AT LEAST every 90 days, and that the examining physician keep clear and acc-

12. urate records of these examinations and any findings/opinions that are deduced from

13. these examinations so that any and all physicians  can keep themselves INFORMED of Pla-

14. intiff's condition. Plaintiff also asks that this court ORDER the Defendants to provide

15. a Special Diet/Accommodations to Plaintiff whenever they serve peanut-butter "with" or

16. as a meal. The Defendants Refusal/Failure to provide these regular examinations in li-

17. ght of Plaintiff's medical condition, and their failure/refusal to provide Plaintiff

18. with a special diet to accommodate his peanut allergies CLEARLY FALLS BELOW a standard

19. of care which is common amongst the Medical Professionals in Society.

20. Plaintiff seeks PUNITIVE DAMAGES for the actual harm and injury he has and contin-

21. ues to suffer at the hand of Defendants, and for the extreme emotional duress and ang-

22. uish caused by the Defendants actions. These actions amount to violations of Plaint-

23. iff's Eighth Amendment protections, and protections under Article One section Seven of

24. the California Constitution. And for these injuries Plaintiff's asks for punitive dam-

25. ages in the amount of $250,000.00 from each Defendant and all of them.

26. Plaintiff also asks for GENERAL DAMAGES in the amount of $10,000.00 from each De-

27. fendant and all of them for every day that Plaintiff has been subjected to discrimina-

28. tion by the Defendants REFUSAL/FAILURE to accommodate Plaintiff's peanut allergies -

1. (starting from February 4, 2007 -to- this present date).

2.

3.                              VERIFICATION

4.    I, Juan Villa Ramirez declare under penalty of perjury that ALL of the foregoing

5. is true and correct pursuant to 28 U.S.C. §1746.

6.

7.

8.

9. dated: 8·30·07          signed: _Juan Ramirez_

10.                                   Juan Villa Ramirez (T-24667)
11.                                   San Quentin Prison (4-EY-22)
                                      San Quentin, Ca. 94974
12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

DECLARATION BY PLAINTIFF JUAN VILLA RAMIREZ

I, Juan Villa Ramirez declare under penalty of perjury that ALL of the following is True and Correct pursuant to 28 U.S.C. sec. 1746.

1.) I, Juan Villa Ramirez am a prisoner incarcerated at San Quentin State Prison.

2.) I, Juan Villa Ramirez am NOT AN ATTORNEY, Nor, do I have ANY formal training in the law.

3.) I, Juan Villa Ramirez would not have been able to submit this sec. 1983 to this court in spite of my cognizable claims of the Defendant's DELIBERATE INDIFFERENCE to my medical conditions' and medical needs', WITHOUT THE HELP and ASSISTANCE of Inmate Richard John Vieira. (see Declaration by Richard John Vieira).

4.) I, Juan Villa Ramirez have read this sec. 1983 in it's entirety, And the description of events, diagnosis and treatments which are presented in this complaint are as accurate as could have been described by Richard John Vieira. And I, Juan Villa Ramirez am able and willing to testify as to any matters that this court deems is necessary to satisfy the interest of justice in regards to this complaint, my medical conditions' and the treatment I am and am not receiving. And I, Juan Villa Ramirez respectfully ask this court to allow me to do so, to alleviate any deficiencies that this court may find with this sec. 1983, and because "I" Juan Villa Ramirez am the "best" piece of evidence in this case if the court can/will visually look at and see my condition.

dated: 6.30.07                          Signed: _Juan Ramirez_

Juan Villa Ramirez (T-24667)
San Quentin Prison (4-EY-22)
San Quentin, Ca. 94974

DECLARATION BY RICHARD JOHN VIEIRA

I, Richard John Vieira declare under penalty of perjury that ALL of the following is True and Correct pursuant to 28 U.S.C. sec. 1746.

1.) That I, Richard John Vieira am a prisoner incarcerated at San Quentin State Prison.

2.) That I, Richard John Vieira only have a Tenth Grade education.

3.) That I, Richard John Vieira AM NOT AN ATTORNEY, Nor do I have ANY formal training in the law.

4.) That I, Richard John Vieira have volunteered to assist the Plaintiff "Complete" and "Submit" this sec. 1983 to recover relief and remedy his violated State and Constitutional rights; Because the Plaintiff Juan Villa Ramirez would not have been able to complete and submit this complaint on his own, which would cause the Plaintiff to live under conditions of continued discomfort and pain, And also subject Plaintiff to the Defendants' continued Deliberate Indifference to Plaintiff's medical conditions and needs.

5.) Due to the fact that I, Richard John Vieira am NOT AN ATTORNEY, or trained in the law. I respectfully ask this court to forgive any deficiencies, or misinterpretations in the law and this court's own procedures. And that this court will consider ALL of Plaintiff's Medical Issues and Claims in spite of "Declarant's" errors, deficiencies or ability to present Plaintiff's claims in a clear, articulate manner.

6.) That I, Richard John Vieira am available and willing to testify before this court as to any of the issues, claims or arguments that are presented in this sec. 1983.

dated: _August 30 , 2007_          signed: _____

Richard John Vieira (H-31000)
San Quentin Prison (4-EB-86)
San Quentin, Ca. 94974




PLASTIC MAN

SS MAIL



$3.420
US POSTAGE
PARCEL POST
FROM 94705
AUG 29 2005
stamps.com

062S0000307011

U.S. POSTAGE
PAID
SAN QUENTIN.CA
94964
SEP 07
AMOUNT
$0.00
0002245T-01

SAN QUENTIN, CA
SEP
7
2007
94974
U.S.P.S.





94102



0000   0022-4ST-01

UNITED STATES
POSTAL SERVICE

420 94102000 99 1000

RECEIVED OFFICE OF THE CLERK

SEP 10 2007   U.S. DISTRICT COURT

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NORTHERN DIST. OF CALIF.

450 GOLDENGATE AVE.

SAN FRANCISCO, CA. 94102

RICHARD J. VIEIRA (H-31000)

SAN QUENTIN PRISON (4-EB-86)

SAN QUENTIN, CA. 94974




PRIORITY MAIL
UNITED STATES POSTAL SERVICE®
www.usps.com

LABEL 107, JUNE 2000

LE GA(

FIRST CLASS

