Continued From Section "A". Appeals Form an Accidental ingestion which I notify the Nurse on Duty.

Peanut Allergies and Reactions Suffered From the ingestion of Peanut Products can be Fatal. So the Necessit of a subsitute Diet is Great. I am Also undergoing several treatments for a Chronic medical Condition.

Seeing as Peanut Butter is a main staple in several of the Lunches During the week, Along with some of the morning Break Fast Meals. I have to go without a portion of my Daily Nutritional needs Because S.Q. has not Supplemented my Diet Accordingly As this is my 2nd Request in writing. They are intentionally Neglecting their Responsibility of care in this Mat

For the Record As you can see in my Medical File I have been steadly losing wighte due to the many times a week I must go without luch.

12·13·06

Juan Ramirez
#T34667
4·E9·22

EXHIBIT C.6 b

Exhibit
A

Chapter 20
Outpatient Therapeutic Diets, Nourishment and Supplements

## VIII.   FOOD ALLERGIES

The PCP shall evaluate inmate-patients who request a special diet due to claimed food allergy. If the PCP determines the inmate-patient has a food allergy, the PCP will determine if the allergy can be appropriately managed by educating and training the inmate to avoid the identified food, or if a Chrono ordering a food substitution is required.

## IX.   NOURISHMENTS AND SUPPLEMENTS

1. Nourishments for insulin-dependent diabetics are provided only if ordered by an institution physician.   Diabetic nourishments shall be purchased by institution Food Services and distributed by institution Food Services or health care staff.

2. Supplements are provided only if ordered by an institution physician.  Supplements shall be purchased and distributed by health care staff.

3. Consistent with medical necessity, physicians and dentists prepare a written order (including a stop date if necessary) for supplements and nourishments for inmate-patients — 1 pregnant, insulin-dependent in...

EXHIBIT C.6c

NEED COPY DOUBLE

*EXHIBIT C.7a*

14

STATE OF CALIFORNIA

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**
CDC 1824 (1/95)

DEPARTMENT OF CORRECTIONS

| INSTITUTION/PAROLE REGION: | LOG NUMBER: | CATEGORY: |
|---|---|---|
| S. C2 | 07-00872 | 18. ADA |

*NOTE:* THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES

*In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.*

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| Juan Villa Ramirez | T29667 | | | 4. E4. 22 |

In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

To proceed to SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form.

If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

## MODIFICATION OR ACCOMMODATION REQUESTED

DESCRIPTION OF DISABILITY:

Allergies to Peanuts & Peanut Products

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?

Have been seen and treated by Dr. Daszko East Block sick call doctor. This has been recorded in my medical file as a serious problem.

DESCRIBE THE PROBLEM:

I can not eat Peanuts, or peanut products. We are being served peanut butter at least 3 times a week for lunch. Also at least 3 times a week for breakfast.

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED?

I am requesting that I be provided with a special diet. To supplement the calories from all these day I'm missing lunch due to being served peanut butter. Also for the 3 breakfast I miss cause peanut butter.

Juan Ramirez                over    2.4.07

INMATE/PAROLEE'S SIGNATURE                DATE SIGNED          MAR 02 REC'D

REASONABLE MODIFICATION OR ACCOMMODATION REQUEST
CDC 1824 (1/95)

REVIEWER'S ACTION

DATE ASSIGNED TO REVIEWER: **MAR 0 2 2007**

DATE DUE: **MAR 2 3 2007**

TYPE OF ADA ISSUE

☐ PROGRAM, SERVICE, OR ACTIVITY ACCESS (Not requiring structural modification)

    ☐ Auxiliary Aid or Device Requested

    ☐ Other_____

☐ PHYSICAL ACCESS (requiring structural modification)

DISCUSSION OF FINDINGS:_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

    *2/28/07*                       *Cepenea R.D. FA-I*

DATE INMATE/PAROLEE WAS INTERVIEWED              PERSON WHO CONDUCTED INTERVIEW

DISPOSITION

    ☐ GRANTED    ☐ DENIED    ☐ PARTIALLY GRANTED

BASIS OF DECISION:_____

_____

_____

_____

_____

_____

_____

**NOTE:** *If disposition is based upon information provided by other staff or other resources, specify the resource and the information provided. If the request is granted, specify the process by which the modification or accommodation will be provided, with time frames if appropriate.*

DISPOSITION RENDERED BY: (NAME)           TITLE           INSTITUTION/FACILITY

APPROVAL

ASSOCIATE WARDEN'S SIGNATURE          DATE SIGNED

DATE RETURNED TO INMATE/PAROLEE

San Quentin Appeals Office                                    Appeal Screen-Out Form (rev. 3/17/2003)

# CDC-1824 ADA APPEAL SCREENING FORM

| To: _Ramirez_ | CDC#: _T 24667_ | Housing: _4E4/22_ | Appeal Log #: _07-872_ |

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

The action or decision you are appealing is not within the jurisdiction of CDC (CCR3084.3(c)(1) If the issue is related to a disability you may file a grievance on a BPT 1074 to the Chief Deputy Commissioner. (ARP §IV.J)

You have already submitted an appeal on this same issue. CCR 3084.3(c)(2) Refer to Log #

In your appeal, you are requesting a transfer solely for medical treatment. This request is a non-Americans with Disabilities Act issue; therefore, your appeal was categorized as a CDC-602 Inmate/Parolee Appeal Form. (ARP §IV.23.b)

In your appeal you are complaining about pain and requesting medical treatment with no indication that program access is denied or impeded. This request is a non-Americans with Disabilities Act issue; therefore, your appeal was re-categorized as a CDC-602 Inmate/Parolee Appeal form. (ARP §IV.23.b)

In your appeal, you do not allege that you have a disability that substantially limits a major activity as defined in the Armstrong Remedial Plan. This request is a non-Americans with Disabilities Act issue; therefore, your appeal was re-categorized as a CDC-602 Inmate/Parolee Appeal Form. (ARP §IV.23.b)

You are requesting a Second Level review. However, you have not adequately explained your dissatisfaction with the First level review. Pursuant to the Armstrong remedial plan, you must explain your dissatisfaction with the First Level Response and suggest an appropriate resolution. (ARP §IV.23.e)

Your appeal includes both Americans with Disabilities Act (ADA) and non-ADA issues. Staff shall address your ADA issue(s) only. Your non-ADA issue(s) may be recorded on a CDC-602 Inmate/Parolee Appeal Form. (ARP §IV.23.b)

You are requesting a Second Level Review. However, you failed to submit the appeal within 15 working days of receipt of the First Level decision by the Decision Head. Therefore, your appeal is being rejected. (ARP §IV.23.e / CCR 3084.3(c)(6))

You have inadequately completed the CDC form 1824 (e.g., no signature, section incomplete, missing appeal attachments, etc.) Correct the missing information and forward the appeal back to the Appeals Coordinator's Office (CCR 3084.3(c)(5))

You are requesting extended Reception Center (RC) stay credits, however, you have not been in the RC for more than 60 days. Therefore, your appeal is rejected. If you have a disability that impacts placement (CDC 1845 Section C) or undergoing dialysis treatment and still in the RC more than 60 days you may file another appeal. (ARP §III.A / CCR 3084.3(c)(3)).

Remark(s)     _Submit 602 to Medical_

## Please correct the indicated problems and return your appeal.

| Note: Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will automatically cancelled pursuant to CCR 3084.4(d); you have only 15 working days too comply with any of the above directives (CCR 3084.3(c)(6) / 3084.6(c). | R. Chandler-Dacanay, CC-II W. Jeppeson, CC-II Appeals Coordinator San Quentin State Prison Date: _4-3-7_ |

### PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE

CC    Inmate
      Appeal Attachment
      Appeals Office

_EXHIBIT - C.7 b_

Dietician,                                      2.4.07


I was told I need to
Fill out this Form Because
I need to get a special
Diet Due to Allergies to
Peanut Products.
I Also was told I need to
write you to Request a
Consult From your office.
Can you please File this
paper work or instruct me
As to who I must speak too,
too get this problem Solved

Thank you.


Respectfully;

Juan Ramirel
#J24667
4·E4·22


EXHIBIT - C.7c

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**                Location: Institution/Parole Region    Log No.              Category
**APPEAL FORM**            1. _____ SQ ____    _05-2341____    _____ ___
CDC 602 (12/87)            2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| Juan Ramirez | TJ4667 | | 2-EY-25 |

A. Describe Problem: The problem is that on 7-26-05 all my medications were renewed. But Staff is refusing to give me my Neurontins-900mg 2xs A Day. It has been A month now And I still have not recieve my medications which I really need due to the tumores in my Neck. It should not take this Long for my prescription to be signed off on. Its already been Approved by Dr. Martin.

If you need more space, attach one additional sheet.

B. Action Requested: That I bee given my medication Neurontion 900mg 2xs A Day right AWAY. #2 That Staff stop causing me pain And suffering by not giving me my proper medications.

Inmate/Parolee Signature: _Juan Ramirez_                Date Submitted: 8-22-05

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: I took over this Areas as of 8-1-05 pharmacy states I'mate must be approve through Sacramento State pharmacy medical divison

Staff Signature: _____                Date Returned to Inmate: 9-6-05

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Dissatisfied. That is not an excuse for the long delay in getting my meds. It is going on 2 months now. Your office is causing me undo pain. which is considered Cruel and Unusual Punishment. I have a history of needing this meds.

Signature: _Juan Ramirez_                Date Submitted: 9-12-05

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

EXHIBIT C.8a

SEP 14 REC'D

First Level   ☑ Granted   ☐ P. Granted   ☐ Denied   ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **SEP 14 2005**   Due Date: **OCT 27 2005**

Interviewed by: M.Hill-Culpepper SRMTA. As we discussed you have been receiving the medication you requested. You must submit a Health Service Request form for a medication refill.

Staff Signature: M.Hill-Culpepper   Title: SRMTA   Date Completed: 10-21-05

Division Head Approved: M.W.Barker   Title: CHSA II   **OCT 24 REC'D**   Returned to inmate: 10/24/05
Signature:

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Dissatisfied; these Reviewers Have Failed to Answer the main Problem. Why does it take so long to get this medication Approved when my Medical File shows I need this medication For Pain Relief From Tumors. My Refills should be expedited Due to my Condition.

Signature: Juan Ramirez   Date Submitted: 10-27-05

Second Level   ☑ Granted   ☐ P. Granted   ☐ Denied   ☐ Other   **NOV 07 REC'D**

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **NOV 07 2005**   Due Date: **DEC 08 2005**

☑ See Attached Letter

Signature: SEE BELOW   Date Completed: 12-8-05

Warden/Superintendent Signature: L. Roland D.O.   **DEC 14 REC'D**   Date Returned to Inmate:

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Dissatisfied; First off I was never interviewed by Hill Culpepper regarding this Appeal. I've tried to resolve this Problem at the lowest level but staff just Dismisses my complaints Even though my medication has now been given. I choose to continue this Appeal because (continued on next sheet)

Signature: Juan Ramirez   Date Submitted: 1-4-06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☑ Denied   ☐ Other
☑ See Attached Letter   Date: **MAR 03 2006**

CDC 602 (12/87)

NEED
COPY

State of California                                          Department of Corrections and Rehabilitation

# Memorandum

Date:     December 8, 2005

To:       RAMIREZ-T24667
          California State Prison, San Quentin

Subject:  SECOND LEVEL APPEAL RESPONSE
          LOG NO: SQ 05-02341

ISSUE:

It is the appellant's position that on July 26, 2005 he received his "Medication renewal," but that he did not receive his Neurontin 900 mg. Appellant further alleges that San Quentin medical department is taking too long to issue his renewals.

Specifically the appellant requests as remedy that he be provided his Neurontin, and that staff "Stop causing him pain by not giving him his proper medication.

INTERVIEWED BY:  M. Hill-Culpepper.

REGULATIONS:  The rules governing this issue are:

**15 California Code of Regulations (CCR) §3350. Provision of Medical Care and Definitions.**

(a)   The department shall only provide medical services for inmates, which are based on medical necessity and supported by outcome data as effective medical care. In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that the treatment is considered effective for the purpose intended and is supported by diagnostic information and consultations with appropriate specialists. Treatments for conditions which might otherwise be excluded may be allowed pursuant to section 3350.1(d).

(b)   For the purposes of this article, the following definitions apply:

(1)   Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care.

(2)   Outcome Study means the definition, collection and analysis of comparable data, based on variations in treatment, concerning patient health assessment for purposes of improving outcomes and identifying cost-effective alternatives.

(3)   Outcome Data mean statistics such as diagnoses, procedures, discharge status, length of hospital stay, morbidity and mortality of patients that are collected and evaluated using science-based methodologies and expert clinical judgment for purposes of outcome studies.

(4)   Severe pain means a degree of discomfort that significantly disables the patient from reasonable independent function.

EXHIBIT C. 8 b

RAMIREZ-T24667
CASE NO. 05-02341
PAGE 2

The following facts were determined during the research of this issue: Appellants issues were appropriately addressed and answered in the first formal level response. Specifically, this appeal was GRANTED, and subsequent to this fact, appellant received the requisite pain medication requested. After receiving the appeal response appellant added new allegations and new remedies into the appeal and forwarded the appeal to the Second Formal Level. Specifically, appellant claim that as this has happened to him prior, he is anticipating further occurrences and request as remedy that San Quentin ensure that his medications are renewed in an expedited fashion due to his medical history.

Per CCR Title 15 Section 3084, an appellant must attempt to resolve an issue at the lowest possible level. This is an intentional circumvention of the appeal process, and should have resulted in this appeal being rejected. Additionally, per CCR Title 15, Section 3084, an appellant cannot appeal an anticipated problem that has not actually occurred. Due to these factors, these new requested issues will not be addressed. As noted in the First Level response, however, appellant has received the requested medication, Neurontin.

The attending physician will make a proper diagnosis regarding any medications. The applicable Title 15 section clearly states, in part; Medically Necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care.

The physician's expertise regarding a medical condition is the governing factor with regards to a renewal or discontinuance of any particular pain medication. Furthermore, the patient/inmate cannot dictate what medication, or treatment he receives. Furthermore the inmate cannot determine which physician may provide a diagnosis or prescription of which he approves.


DECISION: The appeal is Granted.

Based upon the totality of information, it is determined San Quentin's medical department is in full compliance with **Title 15 California Code of Regulations (CCR) §3350. Provision of Medical Care**. The attending physician has the authority to determine if any particular pain medication is reasonable and necessary to alleviate severe pain. In this instance, appellant prescription for Neurontin was renewed. Regardless of the fact that appellant did in fact receive the requested pain medication, it is clarified that decisions regarding authorization or discontinuance of a particular pain medication are not within the purview of the appeal process and is not be negotiable. Additionally, as previously noted, an inmate an appellant cannot appeal an anticipated problem that has not actually occurred. Therefore the CDC 602 Appeal is Granted at the SECOND LEVEL based upon appellant's receipt of all remedies originally requested (I.E. receipt of Neurontin).


T. BELAVICH, PH.D.
Health Care Manager
California State Prison, San Quentin

EXHIBIT C.8 c

Continued From sec. H Appeals Form.
This is not the First time this delay
in getting my medication has happened. I'm
pretty sure it will happen again. So I
need a record of my complaint against
medical staff.

Because Hill Culpepper still did
not answer my complaint as to
why it takes over a month to get
medication that has already been
Approved. I added new statements to
my Appeal to show that San Quenti
Medical Staff has a histroy of this type
of maltreatment towards inmates
which is allowed. MTA Hill Culpepper is
just again trying to dismiss my problem
Because I have several Appeals regarding
this type of behavior by S.Q. Medical Staff

Respectfully

Juan Ramirez
#T24667
3-EY-8
1-4-06

EXHIBIT C.8d

M4

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:  **MAR 0 3 2006**

In re:  Ramirez, T-24667
California State Prison, San Quentin
San Quentin, CA 94964

IAB Case No.: 0507365          Local Log No.: SQ 05-2341

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner J. Pearson, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that staff have refused to dispense his Neurontin to him for over one month. The appellant is requesting to be given Neurontin 900 mg. twice a day immediately.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant has been receiving the medication he requested. The appellant has been advised that he must submit a Health Service Request Form in order to obtain medication refills. In this instance, the appellant's prescription for Neurontin has been renewed.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.  FINDINGS:** The evidence presented provides that the appellant has access to medical services and medication deemed appropriate by medical personnel. California Code of Regulations, Title 15, Section (CCR) 3354 establishes that only qualified medical personnel shall be permitted to diagnose illness for inmates. In this particular matter, the medical records and professional staff familiar with the appellant's medical history support the contention that the appellant is receiving adequate medical care/medication.

**B.  BASIS FOR THE DECISION:**
CCR: 3350, 3354

**C.  ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, SQ
        Health Care Manager, SQ
        Appeals Coordinator, SQ
        Medical Appeals Analyst, SQ

*EXHIBIT - C.8 e*

M 3

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. _____    1. _____    _____

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME  JUAN RAMIREZ    NUMBER  T24667    ASSIGNMENT    UNIT/ROOM NUMBER  4-E-J-22

A. Describe Problem: On 8-6-07 the nurses stopped my Pain Medication (Nevrontin 900mg 2x's a Day). They said the computer says the prescription ran out. But I was seen on 7/10/07 at "Sick-Call" by Dr. Alvarez who, at that time, renewed all my Pain mdeications for 90 days. I've asked the Nurse's to please check my Medical File & they'll see they were ordered on 7-10-07 by Dr. Alverez. But all these Nurse's say "it's not their job to check Medical Files for medication orders" so in the meantime I am being made to suffer sever pain from the tumors in my neck & tongue. Because these nurse's refuse to do their job & provide me the proper medical care.

If you need more space, attach one additional sheet.

B. Action Requested: That I be given, immedatly, my proper medication. That staff stop Maliciously causing me sever pain.

Inmate/Parolee Signature: _Juan Ramirez_    Date Submitted: 8-15-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

EXHIBIT C.9a

For the record, this behavior by medical Staff is common-place. This is the 3rd time in 6 months that staff has refused to provide me with the proper medication that was prescribed by the "Sick-Call" Doctor.

Each time I must suffer sever pain all because the medical Staff refuses to follow the Doctors orders. This could be considered "Torture" & violates my civil rights including the 14th amendment to be "Free From Cruel & Unusual Punishment".

Also; I've been submitting "Sick-Call" slips each day stating it's "URGENT" for 9 days now to try to fix this awful problem but Medical Staff has been ignoring me: not calling me for "Sick-Call".

8-15-07

Juan Ramirez
T24-667

EXHIBIT C.9b

**NAME:** Ramirez          **NUMBER:** T24667          **HOUSING:** 4-EY-022S
**CUSTODY:** Max          **CS:**59          **WG/PG:**D2/D
**ASSIGNMENT:** Grade A East Block
**YARD ASSIGNMENT:**  Gr A EB Reintegrated Mix #5

**NEXT COMMITTEE:  120 DAYS**

**Action:** Continue Present Program

**Committee Discussion:**  Inmate Ramirez made a personal appearance before Unit V, ICC for a Program Review. Ramirez was referred to ICC to evaluate his program based on Medical Necessity.  Dr A. Andres, Staff Psychologist, stated that Ramirez was not a participant in the MHSDS program and that there were no mental health issues at this time. Ramirez stated he received 72 hours prior notice of this hearing, understood why he was appearing, and could comprehend today's hearing proceedings. A staff assistant was not assigned for this hearing. Ramirez stated he had no Reasonable Accommodation issues, was in good health and ready to proceed with today's hearing.

Ramirez's case has been under review due to a medical condition wherein he is allergic to peanuts. It was determined by Medical Staff that if the Subject were to consume peanuts or a product that contained peanuts, the subject would require an immediate injection of epinephrine. Unit V staff had concerns as to the accessibility of an EPIpin injector and whether it would or could be used as a weapon. Second to this, Medical Staff and a Dietician evaluated the Subject's request for acquiring supplements not available at the Canteen to support his nutritional needs. Dr Sayler evaluated the situation and determined that the supplements did not meet the requirements of having to be prescribe as a Medical Necessity; That there were alternatives that could be taken without prescribing supplements. This left Unit V Staff with a concern of the Subject's assigned cell and whether Staff could respond with a EPIpin if the subject were to asphyxiate on a peanut product. Subject rejected ICC's recommendation of being move to the first tier of Bayside to provide better access by staff. Subject felt that his assigned inhaler of epinephrine would sufficiently sustain him until responding Staff could inject him with a EPIpin. After a discussion of the issues, ICC members concurred that a EPIpin in a 'crash box', with the Subject's CDCR number, would be located at the Officers desk in East Block to accommodate the Subject. Ramirez stated that he was satisfied with the purposed plan, but still wanted his supplements. Subject was advised that he could appeal the issue of obtaining supplements via the Appeals process. No other issues regarding the Subject's program were necessary to discuss at this time.

**Committee Action:** After considering all case factors, ICC elects to retain Ramirez in **East Block** at Grade , continue WG/PG D2/D, and his placement on **Grade B Reintegrated Mix #5 Exercise Yard.** Ramirez stated he understood today's ICC actions and was  in agreement with their recommendation. Subject was advised of his right to appeal any and all of ICC's actions or decisions. This case will be re-evaluated in **120 days** by UCC as per normal program.

**Committee Members:** Max Lemon, Chief Deputy Warden, D. Dacanay, Associate Warden, R. Fox, Facility Captain, D. Edwards, CCII, Unit Lt.  J. Pickett, Dr. A. Andres, Staff Psych.


Max Lemon, Chief Deputy Warden
Chairperson

D. Edwards, CCII
Recorder

**DATE:**4/12/07          **Classification:** ICC          **San Quentin, SP**
**128G**

*EXHIBIT - D.1*

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME RAMIREZ, JUAN | CDC NUMBER T24667 | INSTITUTION S.Q. |
|---|---|---|

| DATE OF BIRTH 06/25/76 | EPRD DATE CONDEMNED | GENDER M |
|---|---|---|

| PRINCIPLE DIAGNOSIS PEANUT ALLERGY | ICD-9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S) DIETICIAN | | # OF DAYS RECOMMENDED |
|---|---|---|

*Please circle all that apply:* Diagnostic Procedure/(Consultation)   (Outpatient)/Inpatient   (Initial)/Follow-up

Requested Treatment/Service is: EMERGENT   URGENT   (ROUTINE)

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____   Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* ANAPHYLAXIS WITH PEANUTS

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME J. DASZKO, MD | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE 2/14 |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE G72860 | DATE 02/13/07 | Utilization management tracking #: |
|---|---|---|

| DATE OF CONSULTATION 2/28/07 | PRINTED NAME OF CONSULTANT CORA PEREA, R.D. FA-I |
|---|---|

FINDINGS: Ht. 5'6" Wt. 173 lbs. 2/13/07, B.P. 122/75. meds, pulmex, gabapentin, sumatriptan, propranolol, imipramine, loratadine. Labs 9/14/05 - chol. 198, trig's ↑, HDL- 69, chol/HDL ratio - 2.9 @ risk, no. 141, glucose - 93. Ism status: exercise 5x/week. BMI - 28. Recent current wt. 111% IBW. 142±10%. Stated trying to lose weight.

RECOMMENDATIONS: If he eats peanut products, continue to exercise daily. nutritional feeding policy explained to I/m "No substitution." Follow diet as tolerated. He's fully aware to not consume pd. that cause

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: allergy. He's very resistant to lose prior stress. No dietary interventions needed.

| CONSULTANT SIGNATURE CORAZON C. PEREA R.D. REGISTERED DIETITIAN Cperea RD | DATE 2/28/07 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | T24667 |
| PCP SIGNATURE | DATE | RAMIREZ, JUAN |

RAMIREZ, JUAN
06/25/1976
40422

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN - TO UHR PENDING ORIGINAL
CANARY - CONSULTANT
PINK - UM
GOLD - SPECIALTY SCHEDULER

EXHIBIT D.2

PHYSICIAN REQUEST FOR SERVICES (RFS)   CDC 7243 (Rev. 11/02)

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME RAMIREZ | CDC NUMBER 724667 | INSTITUTION SQ - 4EY-228 |
|---|---|---|

| DATE OF BIRTH | EPRD DATE Gardner | GENDER |
|---|---|---|

PRINCIPLE DIAGNOSIS  Peanut Allergy          ICD - 9 CODE          CPT CODE(S)

REQUESTED SERVICE(S)  Dietician                                  # OF DAYS RECOMMENDED

*Please circle all that apply:* Diagnostic Procedure/**Consultation**     **Outpatient**/Inpatient     **Initial**/Follow-up

Requested Treatment/Service is:     **EMERGENT**          **URGENT**          (**ROUTINE**)

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____          Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):*  Peanut Allergy

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME  AGUARGZ | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE 3/8/07 |
|---|---|---|

| REQUESTING PHYSICIAN SIGNATURE | DATE 3/7/7 | Utilization management tracking #: |
|---|---|---|

| DATE OF CONSULTATION  3/12/07 | PRINTED NAME OF CONSULTANT  CUARA PEREA RD. FA-I |
|---|---|

FINDINGS:  See previous notes. 2/28/07 - Dietary consult

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE  cepere po | DATE 3/12/07 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | Ramirez |
| PCP SIGNATURE | DATE | T24667 |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR
GREEN    - TO UHR PENDING ORIGINAL
CANARY   - CONSULTANT
PINK     - UM
GOLD     - SPECIALTY SCHEDULER

EXHIBIT
D.3

PHYSICIAN REQUEST FOR SERVICES (RFS)          CDC 7243 (Rev. 11/02)

*MD Line*

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

**836131**
DEPARTMENT OF CORRECTIONS

## PART I:  TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

**REQUEST FOR:**  MEDICAL ☑  MENTAL HEALTH ☐  DENTAL ☐  MEDICATION REFILL ☐

NAME  Juan Ramirez

CDC NUMBER  T34667

HOUSING  4-Ey-22

PATIENT SIGNATURE  Juan Ramirez

DATE  2.1.07

REASON YOU ARE REQUESTING HEALTH CARE SERVICES (Describe Your Health Problem And How Long You Have Had The Problem)  I need to see the Doctor in Order to get A "Dietician Consulat" That is what RN Evans told me. Because I have Food Allergies

*NOTE:  IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III:  TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.)

## PART II:  TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

Date / Time Received:  2/1/07 @ 2000

Received by:  C Goodman

Date / Time Reviewed by RN:  2/1/07    2230

Reviewed by:  B Thompson RN

S:  Sent to MD Line 2/1/07 — B Thompson RN

Pain Scale:   1  2  3  4  5  6  7  8  9  10

O:   T:    P:    R:    BP:    WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |

| PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME  COMPLETED |
|---|---|---|
| | | |

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

*EXHIBITS D. 4*

_Dietary Food Adm— ator_

**693534**

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

_A fee of $5.00 may be charged to your trust account for each health care visit._

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:    MEDICAL ☑    MENTAL HEALTH ☐    DENTAL ☐    MEDICATION REFILL ☐

| NAME Juan Ramirez | CDC NUMBER T-29667 | HOUSING 4-EY-22 |
|---|---|---|
| PATIENT SIGNATURE Juan Ramirez | | DATE 2-27-07 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)   I was given a Duct for an Appointment on 2-26-07 with the (Food Administrator) But was never taken to the Appointment. Will I be re-scheduled As soon As possible? It is very Important  — Thankyou.

_NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM_

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: | Received by: |
|---|---|
| Date / Time Reviewed by RN: 2/27/07  1430 | Reviewed by: B Thompson RN |

Pain Scale:   1  2  3  4  5  6  7  8  9  10

S:    Copy Sent to Food Administrator 2/27/07 - B Thompson RN

O:    T:        P:        R:        BP:        WEIGHT:

A:

P:

☐ **See Nursing Encounter Form**

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|---|---|---|---|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION  SDSP | |

| PRINT / STAMP NAME  Beverly Thompson | SIGNATURE / TITLE  B Thompson RN | DATE/TIME COMPLETED  2/27/07 1430 |
|---|---|---|

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

_EXHIBIT D. 5_

## SNEDEKER, SMITH & SHORT
### Attorneys at Law
PMB 422
4110 S.E. Hawthorne Blvd.
Portland, Oregon 97214

Telephone: 503-234-3584
Facsimile (Snedeker, Smith): 503-232-3215
Facsimile (Short): 503-232-5469

Michael R. Snedeker*
James F. Smith*
Lisa R. Short**
Lic. Daniel Solorio Ramirez
   Of Counsel

*Admitted in California only
**Admitted in California and Oregon

☐  2626 Harrison St.
    Oakland, California 94612
    Tel: (510) 839-9230

☐  P.O. Box 72451
    Davis, California 95617
    Tel: (530) 757-1036

☐  Av. Electricistas no. 2033 Altos
    Col. Libertad, C.P. 21030
    Mexicali, Baja California
    México
    Tel: (52-65) 57-24-58

March 9, 2007

Robert Sillen
Office of the Receiver
1731 Technology Dr., Suite 700
San Jose, CA 95110

Re: Juan Villa Ramirez, T24667

Dear Mr. Sillen,

As you know, Ms. Short has been appointed by the Supreme Court of California to represent Juan Villa Ramirez on appeal from his conviction and judgment of death. We are very concerned about Mr. Ramirez's current medical condition. As you know from previous correspondence from me, Mr. Ramirez has several hemangiomas around his face and neck. We were just informed that he had surgery on Wednesday, March 7, 2007, involving those tumors and was returned to his cell the following day. Mr Ramirez spoke with an attorney in our office this morning and reports as follows: he is in tremendous pain; he is not receiving his medication on a regular basis. As a result of this lapse in medication, he is very weak. It is imperative the he received the proper medication to treat his condition. It has also come to our attention that blanket seizures of East Block Death Row inmates' property took place this past weekend. Mr. Ramirez consequently lost all of his belongings, including important legal and medical documents and medication, for no apparent or stated reason.

We are already have trouble obtaining copies of medical documents for Mr. Ramirez from the staff at San Quentin. The records that have been provided to us are incomplete and are missing information. Ms. Short and I will travel again to San Quentin in early April to attempt to obtain complete copies of said records. Our concern is that, in light of the confiscation of the client's materials, more will become missing or will not be returned altogether.

EXHIBIT

D. 6 (a)

Robert Sillen
March 9, 2007
Page 2

Please advise what we should do to further assist our client in light of the mandates currently in effect from the court and your receivership. We are very worried about his medical condition, which is potentially life threatening, as well as his pain and suffering and the quality of treatment he is receiving.

I appreciate your attention to this matter.

Sincerely,


Jovana Anderson
Legal Assistant


cc:     Juan Villa Ramirez
        Robert Ayers, Warden
        Donald Spector, Esq.

EXHIBIT

D. 6   (b)

By: Jovana Anderson                    Page 1                    Updated 4/4/2007

**CONFIDENTIAL: WORK PRODUCT**
Juan Villa Ramirez
Memos Overview
Created April 2, 2007

3.09.07
        Letter to Mel Greenlee, Sarah Chester, Robert Sillen, Warden and Donald Spector re: property taken and lack of medical attention; particularly medication dispersement and attention after surgery.

02.16.07
        Visit memo
        Juan is concerned with his medication, it is not being brought to him as prescribed, and often he has to wait 12-15 hours for the second dose. He gets on in the am and one before bed, but nothing in the afternoon. He used to receive a 2wk supply so he could take them when he needed, which is no longer the case. Juan said that he would make a chart of 602's and action taken. He is scheduled to see Hoffman at UCSF for the plastic surgery treatment to remove the tumor on the right side. Recovery is estimates at 8 weeks and he is worried that he will not receive the necessary medication after the surgery. The blood work that he is looking for, there was a virus of some kind showing, they are dated April and Sept 2006. The records, as of yet, are no where to be found despite a reference to them in his July sick call request.

1.25.07
        Copy of DCHCS letter to Juan, Cipriano, Sarah and Mel.

01.10.07
        Response to letter dated Nov. 7, 2006 from Division of Correctional Health Care Services. The Unit Health Record states that Ramirez had surgery on 9.12.06. Follow up by primary care provider on 9.22.06 and was provided pain medication. 11.13.06 seen by PCP and requested a change in pain meds, 11.15.06 follow up appt., 12.11.06 was seen by PCP and referred to MRI specialist. The MRI is pending. According to the DCHCS Ramirez is receiving adequate and timely medical attention. They are aware that Ramirez made filed an appeal re this situation. The appeals process is the correct way to remedy these concerns. If he heeds medical assistance request a sick call.

12.29.06
        Left another message with Saylor re Juan's headache medicine.

12.22.06
        Juan is not receiving his headache medicine, Imatrex. I left a message with SQ Dr.

12.15.06

        *EXHIBIT*
        *D. 7 (a)*

By: Jovana Anderson                     Page 2                     Updated 4/4/2007

     Juan left message he was not getting headache meds, that they gave him a 4 or 5 day supply and did not refill his RX.

**11.11.06**

     Letter to Juan requesting signed copies of HIPPA releases. Mentions that I did received certain copies of medical file, but those did not include the blood work pages that he has been requesting. I attached copies of blood work that we did receive, though not the dates that he was looking for.

**11.7.06**

     Faxed letter to Dr. Saylor re Juan not receiving medication since 10.19.06 and from his most recent surgery on 9.19.06m the dispersement has been sporadic.

**10.23.06**

     Letter to Juan sending supplies and updating on eye glasses request. I spoke to Lupe, Saylor's assistant, and was assured that she would go to the eye clinic where the glasses where waiting and deliver them to Ramirez. As well, mailed him copies of documents received from his medical chart.

**10.20.06**

     Letter received from Mel with a letter from Juan attached, filed with Judge Alsup regarding the Thompson Decree.

**10.20.06**

     Visit memo

     Juan is concerned about the blood work of April 06. The Dr. said there was a bug of some kind in his blood, likely to cause ulcers and was given antibiotics. He is concerned because no one has updated him on that problem. He also requested to obtain copies of the blood work of Sept before his surgery, and has received nothing. Currently he is on 2 pain medications and no antibiotic, Nurotin and Narco. He is allergic to Iodine. On Sept 18, Juan had the alcohol scolaro therapy at UCSF. This is his second treatment; the first was a few years ago. They cannot cut out the tumors because they are entangled in his veins. Hoffman was suppose to biopsy one of the tumors but was out of town, that appt was to be rescheduled.

**10.18.06**

     Letter to Robert Sillen and bcc to Sarah, enclosing letter from Juan, regarding medical attention and concerns; Juan's letter is dated 09.24.06

**10.18.06**

     Faxed letter to Dr. Saylor re Juan's condition after surgery; very swollen, not post surgery check up, not receiving pain meds or antibiotics, condition witnessed by family and friends.

**10.12.06**

*EXHIBIT*

*D. 7 (b)*

By: Jovana Anderson                Page 3                Updated 4/4/2007

Letter from Juan; he states that he has filed numerous appeals about his medical attention. He has severe swelling and bruising of lip and tongue on the left side. He immediately informed the medical staff and was not called in until yesterday, 6 days later; the RN referred him to the Dr, then changed her mind and said these signs were normal. He has since developed a lump on his neck. He was to be rescheduled to UCSF.

**10.11.06**

Letter to Dr. Dowd at UCSF, concerned about the health of Juan requesting more information about the recent surgery and his condition, (no response) also enclosed a copy of Juan's medical release.

**09.24.06**

Letter from Juan requesting to mail attached letter to Sillen.
In Juan's letter to Sillen; he states he is sick and has tumors in his neck that cause his severe pain and that he has filed several 602's and they have all been ignored. He describes an incident where he was in a lot of pain and had to call man down in order  to obtain medical attention. He was seen by a nurse, but the nurse recommended that he been seen by the DR. He was then told that a DR was not around to see him and he was to be cleared and returned.

**09.26.06**

Request with Lilibeth to review medical records on 10.19.06.

**09.20.06**

No response from the Dr about Juan's procedure, so I called back. I was told that he had Neuro IV Radiology with Dr. Dowd. I called Dowd, no answer, left message. Called Saylor, no answer, left message.

**09.19.06**

Ann had left a message stating that Juan was taken to the hospital for surgery. He had gone last week to do pre-op work. I called UCSF and requested to speak with the Dr. and got his assistant. She was not familiar with the procedure, stated that he was ready to be returned- they were waiting on the van and the Drs think that he is better. (Whatever that means) She said there was some swelling. I left a message with the Dr to call me and elaborate on the procedure. No response from the Dr.

**09.07.06**

Appeal Decision regarding above mentioned incident, was denied.

**06.08.06**

Letter from Juan. On the afternoon of 6.6.06 he was taken to UCSF and was examined by Dr. Hoffman. Juan was to receive another MRI, as his last one was in 2002. After Hoffman talks with Dowd, they will call SQ and request an appt for surgery. He will be getting the alcohol scolaro therapy. He requested that we call Dowd or Hoffman around the 20th to see what the Dr.'s decisions were about how to proceed.

*EXHIBIT*

*D. 7 (c)*

By: Jovana Anderson                     Page 4                     Updated 4/4/2007

06.07.06
    Letter to Juan enclosing authorizations to be signed and a medical power of attorney from the Consulate to be signed.

06.05.06
    Date a letter from Juan received by Alsup's Clerk, Richard Wieking.

| | |
|---|---|
| 12.15.06 | Juan left message he was not getting headache meds, that they gave him a 4 or 5 day supply and did not refill his RX |
| 12.22.06 | Juan is not receiving his headache medicine, Imatrex |
| | Left message with SQ |
| 12.29.07 | Juan is still not receiving his headache medicine, Imatrex |
| | Left message with SQ |

EXHIBIT
D. 7 (d)



University of Califor
San Francisco

Department of Dermatology

Bruce U. Wintroub, MD
Professor and Chair
UCSF Medical Center
1701 Divisadero Street
San Francisco, CA 94115
tel: 415-353-7800
Acne/Related Disorders
Lee T. Zane, MD
Autoimmune Dermatology
M. Kari Connolly, MD
Julie A. Letsinger, MD
Environmental Dermatoses
Howard Maibach, MD
General Dermatology
Timothy G. Berger, MD
Julie A. Letsinger, MD
Theodora Mauro, MD
Bruce Wintroub, MD
Lee T. Zane, MD
Pediatric Dermatology
Ilona Frieden, MD
Anita Haggstrom, MD
Renee Howard, MD
Mary Williams, MD
Wound & Ulcer Care
Theodora Mauro, MD
350 Parnassus Avenue
San Francisco, CA 94117
tel: 415-476-9350
General Dermatology
Ruby Ghadially, MD
Pui Kwok, MD, PhD
Vera H. Price, MD
Jack S. Resneck, MD
Janellen Smith, MD
Maria Wei, MD, PhD
Hair & Nail Disorders
Vera H. Price, MD
HIV Dermatology
Karl Wilkins, MD
1569 Sloat Blvd
San Francisco, CA 94132
tel: 415-353-9339
General Dermatology
Toby Maurer, MD
1701 Divisadero Street
San Francisco, CA 94115
tel: 415-353-7800
Cutaneous Oncology/Melanoma
1600 Divisadero Street
San Francisco, CA 94115
tel: 415-353-9900
Boris Bastian, MD
James Cleaver, PhD
Mohammed Kashani-Sabet, MD
Richard Sagebiel, MD
Janellen Smith, MD
Herschel Zackheim, MD
Dermatologic Surgery & Laser Center
1701 Divisadero Street
San Francisco, CA 94115
tel: 415-353-7878
Roy Grekin, MD
Whitney D. Tope, MPhil, MD
Christopher Zachary, MB, FRCP
Dermatopathology
1701 Divisadero Street
San Francisco, CA 94115
tel: 415-353-7546
Boris Bastian, MD
Philip E. LeBoit, MD
Timothy H. McCalmont, MD
Medical Mycology
1 Irving Street
San Francisco, CA 94122
tel: 415-476-3046
Raza Aly, PhD
Psoriasis, Eczema & Phototherapy
515 Spruce Street
San Francisco, CA 94118
tel: 415-476-4701
John Y. M. Koo, MD

October 7, 2005

William Williams, M.D., Chief Medical Officer
San Quentin State Prison
Medical Department
San Quentin, California 94964
Phone: 415-454-1460 ext. 5527
Fax: 415-455-5002

RE:     RAMIREZ, Juan      T24667
UC#:    4438471-0
DOB:    06-25-76
DOS     10-07-05

Dear Dr. Williams:

We had the pleasure of seeing Mr. Juan Ramirez at the University of California, San Francisco Birthmarks and Vascular Anomalies Center on October 7, 2005. The attending physicians present at this evaluation and conference were the following: Ilona Frieden, Christopher Dowd, William Hoffman, Mahesh Mankani, Kristina Rosbe, and Whitney Tope. They represent the following specialities and subspecialties: pediatric dermatology, dermatologic and laser surgery, plastic surgery (including both pediatric and hand specialists), neurointerventional radiology, and otolaryngology.

As you know, Mr. Ramirez is a 29-year-old incarcerated gentleman who has a diagnosis of multifocal venous malformation involving the right face, tongue, soft palate, and right anterior neck. This patient is well known to our clinic and presents for follow-up and evaluation for therapeutic interventions. As you know, Mr. Ramirez has suffered from intermittent attacks of swelling, pain, and tenderness at the sites of his venous malformations, some of which have triggered migraine-like headaches. A previous trial of low-dose aspirin did not alleviate his symptoms. On July 19, 2004, Mr. Ramirez had alcohol sclerotherapy of the right anterior neck, which provided complete symptomatic relief to the treated area. Since that procedure, he has

87246-3424.ZD1

EXHIBIT
D. 8 (a)

RE: RAMIREZ, Juan
October 7, 2005
Page 2

discontinued the aspirin but continues to have intermittent swelling in other areas, primarily under the right mandible and inside the mouth. He also suffers from swelling on the left side of his tongue which occasionally results in ulceration. His main concerns include swelling and tenderness of these areas which have resulted in great pain, as well as difficulty eating when he has active lesions in the mouth.

PAST MEDICAL HISTORY:  The patient has no additional significant past medical history.

MEDICATIONS:  Tylenol No. 4 and Neurontin. The Neurontin was prescribed for treatment of presumed neuropathic pain along the right cheek and migraine-like headaches that are triggered by swelling of his venous malformation.

ALLERGIES: The patient states that he has an allergy to radiographic contrast. The patient states that on a previous CT scan, immediately following intravenous administration of the radiographic contrast, he developed shortness of breath and generalized rash requiring emergent evaluation in the emergency room.  Prophylaxis with benadryl and systemic corticosteroids enabled him to tolerate IV contrast without complications during his alcohol sclerotherapy in 2004.

PHYSICAL EXAMINATION:  On exam, Mr. Ramirez is a well-appearing gentleman in no apparent distress. His extensive venous malformation is evident in multiple affected areas. The areas of most concern are on the right cheek and the right submandibular region which involve an ill-defined area of swelling extending from the right jawline to the anterior triangle of the cervical neck. Directly below the midpoint of the right mandible, there is a 6-mm well-circumscribed hard nodule that is extremely tender to palpation and is consistent with a phlebolith. In addition, he has a well-healed 2.5-cm scar along the posterior triangle of the cervical neck which represents his prior sclerotherapy procedure. This area has no new swelling or tenderness. In the mouth, the patient has a 4-cm soft submucosal blue nodule on the left lateral aspect of the tongue with mild superficial ulceration. He also has several scattered blue papules and nodules along the tip of the tongue, soft palate, the inferior aspect of the right palatopharyngeal fold, the right molar area, and the right buccal surface.

The patient has no recent imaging.

ASSESSMENT:  Mr. Ramirez has extensive multifocal venous malformations involving the right cheek, tongue, soft palate, and right anterior neck. Although he benefited greatly from the first sclerotherapy procedure in July 2004, he continues to have other foci of the venous malformation that are symptomatic with swelling, tenderness, and pain that are very concerning for low-grade clotting. Unfortunately, the patient is currently managed with only symptomatic pain relief.

EXHIBIT

D. 8 (b)

87246-3424.ZD1

RE: RAMIREZ, Juan
October 7, 2005
Page 3

PLAN: At this time, we would recommend the following:

1. Given the clinical history of intermittent attacks of swelling and pain with likely ongoing chronic clotting, we would recommend restarting low-dose aspirin 81 mg p.o. q.d. as a way to minimize further clotting

2. Given his symptoms, it was the consensus of the conference faculty that Mr. Ramirez will likely need removal of the right submandibular phlebolith and may also needs further sclerotherapy. Given that there is no recent imaging since his prior procedure, we would recommend getting an MRI of the head and neck area to better visualize the current anatomy of his extensive venous malformation. We considered the utility of a CT versus MRI scan for this purpose. However, given his prior adverse reaction to radiographic contrast, we have decided that an MRI will be sufficient.

3. Based on the results of the imaging, we will decide whether the patient should have phlebolithectomy and/or sclerotherapy, and in which order these procedures should occur or whether they can occur at the same time. Likely, these procedures will require general anesthesia and it is possible that the phlebolithectomy can occur on the same day as the sclerotherapy. This decision will be made based on the MRI results. It is planned that Dr. William Hoffman (plastic surgery) will perform the phlebolithectomy; for your reference, his office telephone number is 415-353-4287.

4. Given Mr. Ramirez's adverse reaction to prior administration of intravenous radiographic contrast, it would be prudent to premedicate the patient prior to his next sclerotherapy, a procedure which will involve intravenous administration of radiographic contrast. This may involve a combination of both Benadryl and systemic corticosteroids. We will provide more specific details on a premedication protocol pending the decision regarding the timing and nature of his procedure.

We appreciate the opportunity to be involved in the care of this interesting and pleasant patient. If you have any questions regarding his care, please do not hesitate to contact us.

Sincerely yours,

Ilona J. Frieden, M.D.
Professor of Clinical Dermatology and Pediatrics
Director, UCSF Birthmarks and Vascular Anomalies Center

IJF:aao

Dictated by Kanade Shinkai, M.D.

87246-3424.ZD1

EXHIBIT

D. 8 (c)

RE: RAMIREZ, Juan
October 7, 2005
Page 4

cc:      Christopher Dowd, M.D.
         UCSF Radiology
         Box: 0628

         William Hoffman, M.D.
         UCSF Plastic Surgery
         Box: 0932

         Whitney Tope, M.D.
         UCSF Dermatology
         Box: 0316

         Kristina Rosbe, M.D.
         UCSF Otolaryngology
         Box: 0342

         Mahesh Mankani, M.D.
         UCSF Plastic Hand Surgery
         Box: 0807

         Juan Ramirez
         San Quentin State Prison
         San Quentin, California, 94964

87246-3424.ZD1

EXHIBIT
D.8 (d)



University of California
San Francisco

Department of Dermatology

General Dermatology
Timothy G. Berger, MD
Theodora Mauro, MD
Boris Bastian, MD
UCSF/Mount Zion Medical Center
1701 Divisadero St.....353-7800
Michelle Aszterbaum, MD
M. Kari Connolly, MD
Peter M. Elias, MD
Ruby Ghadially, MD
Michael Huie, MD
Vera H. Price, MD
Janellen Smith, MD
Maria Wei, MD
Bruce Wintroub, MD
UCSF Medical Center
350 Parnassus Ave.....476-9350
Toby Maurer, MD
UCSF Lakeshore Practice
1569 Sloat Blvd.....476-9339

Autoimmune Dermatology
M. Kari Connolly, MD
UCSF Medical Center
350 Parnassus Ave.....476-9350

Cutaneous Oncology/Melanoma
Boris Bastian, MD
Mohammed Kashani-Sabet, MD
Richard Sagebiel, MD
Janellen Smith, MD
Herschel Zackheim, MD
James E. Cleaver, PhD, Program Leader
UCSF/Mount Zion Medical Center

Dermatologic Surgery & Laser Center
Carie Chui, MD
Roy Grekin, MD
Christopher Zachary, MD
UCSF/Mount Zion Medical Center
1701 Divisadero St.....353-7878

Dermatopathology
Philip E. Leboit, MD
Timothy H. McCalmont, MD
UCSF Dermatopathology Service
1701 Divisadero, #350
353-7546/800-497-0244

Environmental Dermatoses
Howard Maibach, MD
UCSF/Mount Zion Medical Center
1701 Divisadero St.....353-7800

Hair and Nail Disorders
Vera H. Price, MD
UCSF Medical Center
350 Parnassus Ave.....476-9350

Medical Mycology
Raza Aly, PhD
Department of Dermatology
School of Medicine.....476-4256

Pediatric Dermatology
Ilona Frieden, MD
Mary Williams, MD
UCSF/Mount Zion Medical Center
1701 Divisadero St.....353-7800

Psoriasis, Eczema and Phototherapy
John Y. M. Koo, MD
Psoriasis, Skin Treatment Center
and Clinical Research Center
515 Spruce St.....476-4701

Wound and Ulcer Care
Marketa Limova, MD
Theodora Mauro, MD
UCSF/Mount Zion Medical Center
1701 Divisadero St.....353-7800

April 22, 2003

William Williams, M.D.
San Quentin State Prison Medical Department
San Quentin, California 94964

RE:    RAMIREZ, Juan
UC#:   4438471-0
DOB:   6-25-76
DOS:   4-18-03

Dear Dr. Williams:

I am writing regarding the visit of Juan Ramirez at the UCSF multidisciplinary Vascular Anomalies Clinic. The Vascular Anomalies Clinic is a clinic consisting of a dermatologist, plastic surgeon, neurointerventional radiologist, and a head and neck surgeon. In addition, residents and fellows also attend this clinic. We had the opportunity to see Mr. Ramirez on April 18th for evaluation and all of the above-mentioned specialists did see Mr. Ramirez at that time. Portions of his history are well outlined by Dr. Christopher Dowd's note of January 29th. As you know, he is a 26 year old gentleman who is currently an inmate at San Quentin. He recalls a history of an anomaly involving his right neck, tongue and oral cavity since early childhood. A fine needle aspirate of right neck mass several years ago apparently yielded blood and a diagnosis of "hemangioma" was made. Mr. Ramirez feels that over time his abnormalities have worsened and in particular in the last months to years the soft tissue mass of the right neck and angle of the jaw seems to be much larger.

16516-3405.DOC

EXHIBIT D.9 (A)